## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 09-0012 FMO-1 |
| Plaintiff, | |
| v. | **ORDER RE: MOTION FOR COMPASSIONATE RELEASE** |
| HUGO EDUARDO ALFARO PULIDO, | |
| Defendant. | |

Having reviewed and considered the briefing filed with respect to defendant Hugo Eduardo Alfaro Pulido's ("defendant") Motion for Compassionate Release [ ] (Dkt. 167, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

On July 22, 2009, defendant pled guilty to conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A). (See Dkt. 50, Criminal Minutes - Change of Plea). The court thereafter sentenced defendant to 186 months in custody, to be followed by a five-year term of supervised release. (See Dkt. 125, Judgment and Commitment Order ("Judgment") at 1). Defendant has been detained since November 30, 2008. (See Dkt. 65, Presentence Investigation Report at 1). Based on his projected release date of February 15, 2022, (see BOP Inmate Locator, https://www.bop.gov/inmateloc/), which includes good time credit, defendant has served approximately 97 percent of his sentence.

On February 13, 2021, defendant, who is incarcerated in Texas at CI Big Spring (Flightline), submitted a request for a reduction in sentence to the Warden which was denied the next day. (See Dkt. 167, Motion, Declaration of James S. Threatt ("Threatt Decl.") at ¶ 2). On March 4, 2021, defendant appealed to the Regional Director and did not receive a response. (See id.). Counsel for defendant also submitted a request for a reduction in sentence to the Warden of CI Big Spring (Flightline). (See id. at ¶ 3); (Dkt. 167-6, Exh. 6, Isabel Bussarakum Letter of May 11, 2021). Counsel did not receive a response to that request. (See Dkt. 167, Threatt Decl. at ¶ 3). Defendant thereafter filed the instant Motion, seeking compassionate release in light of his medical conditions, including obesity and hypertension, and his resulting vulnerability to COVID-19. (See Dkt. 167, Motion at 2).

## LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526, 131 S.Ct. 2685, 2690 (2011) (cleaned up). One such exception is compassionate release, which allows a court to reduce a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a),[1] if the court "finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A).

On December 21, 2018, Congress passed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"), "a landmark piece of criminal-justice reform legislation that amended numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." United States v. Rodriguez, 451 F.Supp.3d 392, 396 (E.D. Pa. 2020) (cleaned up). Before the FSA's passage, a defendant could only petition the Director of the Bureau of Prisons ("BOP") for compassionate release, who could then, at his or her discretion, seek relief from the district court on behalf of the defendant. See U.S. Sentencing Guidelines ("U.S.S.G.") § 1B1.13, cmt. n. 4 (U.S. Sentencing Comm'n 2018). The FSA revised these

---

[1] Unless otherwise indicated, all section references are to Title 18 of the United States Code.

procedures to permit defendants to petition district courts directly for sentence modifications, see 18 U.S.C. § 3582(c)(1)(A), and "grant[ed] broad discretion to the district courts in providing relief." United States v. Parker, 461 F.Supp.3d 966, 974 (C.D. Cal. 2020) (internal quotation marks omitted).

The FSA established a three-step process for a defendant seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A):

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if extraordinary and compelling reasons warrant such a reduction and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. Third, the district court must also consider the factors set forth in Section 3553(a) to the extent that they are applicable.

United States v. Rodriguez, 424 F.Supp.3d 674, 680 (N.D. Cal. 2019) (citations and internal quotation marks omitted). Defendant "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction." United States v. Greenhut, 2020 WL 509385, *1 (C.D. Cal. 2020) (citing United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

## DISCUSSION

I.  EXHAUSTION.

A defendant may file a motion with the district court seeking compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Section "3582(c)(1)(A)'s administrative exhaustion requirement is mandatory and must be enforced when properly raised by the government." United States v. Keller, 2 F.4th 1278, 1282 (9th Cir. 2021). Here, the government concedes that defendant has met the exhaustion requirement. (See Dkt. 168, Government's Opposition to Defendant's Motion to Reduce Sentence [] ("Opp.") at 1); see, e.g., United States v. Mitchell, 2020 WL 2770070, *3 (E.D. Cal. 2020) (declining to address

whether defendant must exhaust administrative remedies after the warden declined his request for compassionate release because government conceded that defendant met exhaustion requirement); United States v. Johnson, 2020 WL 2307306, *4 (E.D. Cal. 2020) ("Because the government effectively concedes defendant has met the exhaustion requirement, the court assumes defendant has exhausted without reaching the question of how to interpret the statutory text of § 3582(c)(1)[.]").

II. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES.

Before the FSA's passage, the Sentencing Commission identified four categories of situations that qualify as "extraordinary and compelling circumstances": "serious medical conditions, advanced age, family circumstances, and a catch-all 'other reasons.'"[2] United States v. Cooper, 2020 WL 2064066, *3 (D. Nev. 2020); U.S.S.G. § 1B1.13[3] ("§ 1B1.13"). Although the FSA directed the Sentencing Commission to "promulgate the criteria to be applied and a list of specific extraordinary and compelling examples[,]" "the Sentencing Commission has not updated § 1B1.13 since the First Step Act amended § 3582(c)(1)(A). The current version of § 1B1.13 refers only to motions filed by the BOP Director, and does not reference motions filed by a

---

[2] Regarding "serious medical conditions," the Sentencing Guidelines state that "extraordinary and compelling reasons" exist when the defendant has a physical, functional, or cognitive impairment "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n. 1(A).

[3] Section 1B1.13 provides that "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that–

(1)(A) extraordinary and compelling reasons warrant the reduction; or
(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

defendant as now allowed under § 3582(c)(1)(A)." United States v. Aruda, 993 F.3d 797, 800 (9th Cir. 2021) (footnote omitted).

In Aruda, the Ninth Circuit resolved the split among district courts as to whether the current version of § 1B1.13 is an applicable Sentencing Commission policy statement that is binding on a defendant rather than the BOP Director. See 993 F.3d at 801-802. The Aruda court resolved the split, holding "that the current version of U.S.S.G. § 1B1.13 is not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A) motions filed by defendant. In other words, the Sentencing Commission has not yet issued a policy statement `applicable' to § 3582(c)(1)(A) motions filed by a defendant. The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." Id. at 802 (cleaned up).

The government contends that "Defendants with CDC-recognized risk factors who are vaccinated . . . do not meet [] any of the criteria in § 1B1.13" and "almost never can satisfy the 'extraordinary and compelling' requirement in the statute." (Dkt. 168, Opp. at 2). Even assuming U.S.S.G. § 1B1.13 was an applicable policy statement, which it is not, the court is persuaded that defendant's medical conditions – obesity and hypertension – constitute "extraordinary and compelling reasons" within the meaning of U.S.S.G. § 1B1.13.

Defendant is a 46-year-old man suffering from obesity and hypertension. (See Dkt. 167, Motion at 1-2); (Dkt. 167-4, Exh. 4, Defendant's Medical Records at ECF 1253, 1255, 1257, 1259, 1261, 1263). According to the Centers for Disease Control and Prevention ("CDC"), "obesity . . . can make [one] more likely to get severely ill from COVID-19" and "the risk of severe [] illness increases sharply with elevated BMI." "People With Certain Medical Conditions," Centers for Disease Control and Prevention (last updated May 13, 2021); see also United States v. Lacy, 2020 WL 2093363, *6 (C.D. Ill. 2020) ("[O]besity . . . alone would increase the serious risks of COVID-19 for Defendant."); United States v. Delgado, 457 F.Supp.3d 85, 89 (D. Conn. 2020) (noting NYU study that found that "obesity of patients was the single biggest [chronic] factor, after age, in whether those with COVID-19 had to be admitted to a hospital") (internal quotation marks omitted); see, e.g., United States v. Trent, 2020 WL 1812242, *2 (N.D. Cal. 2020) (finding

5

"extraordinary and compelling reasons" justifying compassionate release where defendant suffered from HIV/AIDS, diabetes, and obesity). This increased risk is due to the "impaired immune function" and "decrease[ in] lung capacity and reserve, [which] can make ventilation more difficult" for obese individuals. "Obesity, Race/Ethnicity, and COVID-19," Centers for Disease Control and Prevention (last updated March 22, 2021). Studies show that as BMI increases, the "risks of hospitalization, intensive care unit admission, invasive mechanical ventilation, and death" also increase. Id. Moreover, "the increased risk for hospitalization or death was particularly pronounced in those under age 65." Id. (footnote omitted).

The CDC has also noted that "high blood pressure (hypertension) can make [one] more likely to get severely ill from COVID-19." "People With Certain Medical Conditions," Centers for Disease Control and Prevention; see also United States v. Pena, 459 F.Supp.3d 544, 550 (S.D.N.Y. 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"); United States v. Sanders, 2020 WL 1904815, *4 (E.D. Mich. 2020) (citing several courts that "have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic"); United States v. Richardson, 2020 WL 3402410, *3 (E.D. Cal. 2020) ("Defendant's hypertension alone places him at significant risk of complications [from COVID-19]."). In short, defendant "credibly claims two conditions – [obesity and hypertension] – that the Centers for Disease Control and Prevention linked to COVID-19 complications[, and t]he Court will not brush off these concerns as just another downside of prison." United States v. Stephenson, 461 F.Supp.3d 864, 872 (S.D. Iowa 2020); see, e.g., United States v. Sarkisyan, 2020 WL 2542032, *2 (N.D. Cal. 2020) (finding that "in the context of the COVID-19 pandemic, [defendant's hypertensive heart disease and obesity], render[ed him] uniquely vulnerable to serious illness if he [were] to contract[ ] COVID-19").

In addition, the court cannot ignore the proliferation of Delta variant cases during the past few months. As of September 30, 2021, the country is averaging 111,210 new cases daily, along with 1,927 deaths and 80,565 hospitalizations. "Coronavirus in the U.S.," New York Times (last accessed October 1, 2021). Although there has been a 26% decrease in new cases over the

previous two weeks, id., the Delta variant accounts for more than 99% of new cases. "COVID Data Tracker Weekly Review," Centers for Disease Control and Prevention (last accessed October 1, 2021). In Texas, where defendant is incarcerated, the Delta variant has been especially pronounced. The average number of reported daily cases is 11,044 with 10,805 new hospitalizations. "Tracking Coronavirus in Texas: Latest Map and Case Count," New York Times (last accessed October 1, 2021). Only 51% of the population is fully vaccinated and in Howard County, where defendant is incarcerated, only 30% of the population is fully vaccinated. Id.

The Delta variant is "more infectious" and transmissible "when compared with other variants, even in vaccinated individuals." "Delta Variant: What We Know About the Science," Centers for Disease Control and Prevention (updated August 26, 2021). According to the CDC, the Delta variant may cause twice as many infections as previous variants and produces "similar amounts of viral genetic material" in both unvaccinated and fully vaccinated people. Id. Those who are fully vaccinated can spread the Delta variant to others if symptomatic. Id. An internal CDC document estimates that there are approximately "35,000 symptomatic breakthrough infections per week among . . . fully vaccinated adults[.]" "CDC Warns in Internal Document That 'War Has Changed' With the Coronavirus," NBC News (July 30, 2021). Indeed, as a result of the spread of the Delta variant, the CDC currently recommends wearing a mask indoors in public places. "Delta Variant, What We Know About the Science," Centers for Disease Control and Prevention (updated August 26, 2021).

Although "COVID-19 vaccines are effective at helping protect against severe disease and death from variants of the virus . . . , including the Delta variant[,]" "Key Things to Know About COVID-19 Vaccines," Centers for Disease Control and Prevention (last updated October 4, 2021), "[s]tudies show that after getting vaccinated against COVID-19, protection against the virus may decrease over time and be less able to protect against the Delta variant." "Who is Eligible for a COVID-19 Vaccine Booster Shot?" Centers for Disease Control and Prevention (updated September 30, 2021). In general, vaccines tend to be less effective in individuals with medical conditions like the ones defendant has. See Sarah Varney, "America's Obesity Epidemic Threatens Effectiveness of Any COVID-19 Vaccine," Kaiser Health News (August 6, 2020)

("[B]lood tests show that obese people and people with related metabolic risk factors such as high blood pressure . . . experience a state of chronic mild inflammation[.] . . . [C]hronic inflammation seems to interfere with the immune response to vaccines, possibly subjecting obese people to preventable illnesses even after vaccination."). In other words, vaccination status alone does not preclude a defendant from demonstrating "extraordinary and compelling" circumstances justifying release, i.e., the court is not persuaded by the government's claim that prisoners "who are vaccinated . . . do not meet . . . any of the criteria in § 1B1.13." (Dkt. 168, Opp. at 2); see United States v. Darby, 2021 WL 2463841, *2 (N.D. Ohio 2021) ("[B]eing vaccinated does not automatically preclude a defendant from demonstrating 'extraordinary and compelling reasons' justifying a sentence modification."); United States v. Pappa, 2021 WL 1439714, *4 (S.D. Fla. 2021) (finding that "extraordinary and compelling reasons exist" to reduce a vaccinated defendant's sentence "based on her underlying medical conditions (including obesity)"); United States v. Hatcher, 2021 WL 1535310, *4 (S.D.N.Y. 2021) (vaccinated defendant who lived through "extreme lockdown conditions and heightened serious risk of severe illness or death" showed "'extraordinary and compelling reasons' for compassionate release"). In light of the foregoing, it is clear that "the pandemic is far from over, and the risk to vulnerable individuals, even those who have been vaccinated, is not negligible." United States v. Sherrod, 2021 WL 3473236, *5 (E.D. Mich. 2021) (an obese inmate demonstrated "extraordinary and compelling reasons" in support of his release although he was partially vaccinated); United States v. Ahmad, 2021 WL 3550229, *1 (S.D.N.Y. 2021) (although his motion was denied for other reasons, "[i]n light of the uncertainties regarding the Delta variant and break-through COVID, [defendant's] vaccination status certainly does not preclude him from relief"); United States v. Sparks, 2021 WL 3510229, *2 (D. Ore. 2021) (same). Indeed, the CDC's most recent recommendation calls for vaccine booster shots for those "who completed their initial series at least 6 months ago and are . . . [a]ge 18+ who have underlying medical conditions [and a]ge 18+ who live in high-risk settings[.]" "Who is Eligible for a COVID-19 Vaccine Booster Shot?" Centers for Disease Control and Prevention (updated September 30, 2021).

In short, the court finds that defendant's obesity and hypertension, coupled with the risk that he may be exposed to the Delta variant, constitute "extraordinary and compelling" circumstances justifying a reduction in his sentence. See, e.g., United States v. Seals, 2020 WL 3578289, *4 & *5 (D. Haw. 2020) (granting compassionate release where defendant's hypertension and obesity "put him at higher risk of severe complications from COVID-19"); United States v. Locke, 2020 WL 3101016, *4 & *6 (W.D. Wash. 2020) (finding that a defendant's medical conditions, including hypertension, "put him at significant risk for even more severe and life-threatening illness if . . . exposed to COVID-19 during his confinement"); United States v. Zukerman, 451 F.Supp.3d 329, 335 (S.D.N.Y. 2020) (determining that inmate suffering from "hypertension[ ] and obesity" demonstrated "extraordinary and compelling" circumstances justifying compassionate release, in light of COVID-19 pandemic, because "the CDC . . . has explained that . . . people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity, are at higher risk for severe illness from COVID-19"); United States v. Connell, 2020 WL 2315858, *6 (N.D. Cal. 2020) (granting compassionate release to defendant with hypertension and noting that "[t]he first large-scale study . . . in the United States found older persons, men, and those with pre-existing hypertension and/or diabetes were the most prevalent among hospitalized COVID-19 patients") (cleaned up).

III. SECTION 3553(a) FACTORS.

A sentence reduction, even if justified by the existence of extraordinary and compelling reasons, may only be granted if it would be consistent with the applicable factors set forth in 18 U.S.C. § 3553. See 18 U.S.C. § 3582(c)(1)(A); Rodriguez, 424 F.Supp.3d at 681. These factors require the court to consider the following factors in determining whether compassionate release is appropriate: (1) the nature and circumstances of defendant's offense and personal history; (2) the need to instill respect for the law, deter future crimes, provide for defendant's rehabilitation, and protect the public; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records. See 18 U.S.C. § 3553(a). In considering whether early release is consistent with defendant's rehabilitation, the court considers whether early release "provide[s]

the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" Id. at § 3553(a)(2)(D).

The government acknowledges that balancing the § 3553(a) factors in this case "is a close question" and that defendant "apparently has done well in prison, and has the support of his family."[4] (Dkt. 168, Opp. at 1). Under the circumstances, the court finds that a balancing of the § 3553(a) factors justifies the release of defendant. See United States v. Daley, 484 F.Supp.3d 1171, 1177 (M.D. Fla. 2020) (circumstances justifying a defendant's compassionate release include status as "a model inmate[,]" "efforts towards rehabilitation[,]" underlying medical conditions, "a high risk of exposure to COVID-19[,]" and "a supportive reentry plan"). Defendant, who has served most of his 180-month sentence, was convicted of a non-violent offense and had no criminal history at the time of conviction. (See Dkt. 65, Presentence Report ("PSR") at ¶¶ 14-34, 56-59). Also, during his incarceration, defendant completed his GED and 26 educational courses in a wide variety of topics such as Spanish literature, guitar, resume writing, and stress management, and currently works as an orderly. (See Dkt. 167-7, Exh. 7, Individualized Needs Plan). Defendant has strong family support as evidenced by the 19 letters submitted in support of his Motion. (See Dkt. 167-2, Exh. 2, Translated Letters). Upon his release, defendant intends to join his family in Tijuana, where he will undoubtedly benefit from their support. (See Dkt. 167, Motion at 7).

Further, incarceration presents extraordinary challenges in preventing and controlling the spread of disease. See Joseph A. Bick, "Infection Control in Jails and Prisons," 45 Clinical Infectious Diseases 1047 (2007). Many facilities employ dormitory-style housing and "have an inadequate number of single cells that can be used for isolation, facilitating the transmission of contagious illnesses." Id. Common areas may be infrequently cleaned, access to showers, soap and water is often restricted, and many facilities lack adequate personal protective equipment. Id. The court did not sentence defendant to death or a serious, life-threatening illness – both

---

[4] The government does not argue that defendant's early release poses a danger to the community. (See, generally, Dkt. 168, Opp.).

possible outcomes if defendant remains in custody. In addition, defendant has served virtually his entire sentence; thus, the time served is just punishment, especially when taking into account the circumstances of his imprisonment.

Moreover, the requirement "to provide the defendant with needed . . . medical care . . . in the most effective manner[,]" 18 U.S.C. § 3553(a)(2)(D), has dramatically shifted since sentencing. At the time of sentencing, the court was not aware of the implications of defendant's medical impairments, nor that "the world would be consumed by a global pandemic" where individuals with weakened immune systems would be among the most vulnerable to COVID-19. See Stephenson, 461 F.Supp.3d at 866. Even if, as the government claims, "it is likely that the Bureau of Prisons could deal with complications from a COVID-19 infection[,]" (see Dkt. 168, Opp. at 5), the court is persuaded that "the most effective means of providing some measure of assurance that [defendant] will be able to best preserve his health will be through [release to] a private residence where he can better be protected from the reach of the pandemic." United States v. Young, 2020 WL 2614745, *4 (W.D. Wash. 2020) (cleaned up); (Dkt. 167, Motion at 7) (describing defendant's plan to reside with his family).

In short, given the circumstances of defendant's case, there is a real possibility that, were he to complete the remainder of his sentence, he could suffer long-term, severe health complications that could even result in death. "This outcome would so greatly exceed just punishment for his offense that the risk cannot be tolerated." Connell, 2020 WL 2315858, at *6; see Castillo v. Barr, 449 F.Supp.3d 915, 923 (C.D. Cal. 2020) ("This is an unprecedented time in our nation's history, filled with uncertainty, fear, and anxiety. But in the time of a crisis, our response to those at particularly high risk must be with compassion and not apathy."). Accordingly, the court finds that the § 3553(a) sentencing factors support defendant's immediate release.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion for Compassionate Release **(Document No. 167)** is **granted**.

2. Defendant's sentence shall be reduced to **time-served**, followed by a term of five years of supervised release.

3. Defendant's term of supervised release shall be subject to the conditions set forth in the court's judgment and commitment order of July 26, 2010, (see Dkt. 125, Judgment), with the following modifications:

    A. Supervised release condition number one, which requires defendant to "comply with the rules and regulations of the U.S. Probation Office and General Order 318[,]" (see id. at 1), shall be modified to require defendant to comply with the rules and regulations of Amended General Order 20-04; and

    B. Defendant shall comply with national, state, and local public health orders regarding COVID-19 during his term of supervised release.

Dated this 12th day of October, 2021.

                                                  /s/
                                    Fernando M. Olguin
                               United States District Judge